**ENNIS LEE BROWN,**

                    Plaintiff,

        v.                                                   **Case No. 16-cv-1463-pp**

**JAIMAN DUYOUNG,**
**DR. RICKY SEABULL,**
**DR. THOMAS WILLIAMS,**
**JANE DOE, AND JOHN DOE,**

                    Defendants.

---

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 2), SCREENING PLAINTIFF'S COMPLAINT (DKT. NO. 1), DISMISSING DEFENDANTS JAIMAN DUYOUNG AND JOHN DOE, DENYING THE PLAINTIFF'S MOTION TO SUBSTITUTE JUDGE (DKT. NO. 7), AND DIRECTING SERVICE ON THE REMAINING DEFENDANTS**

---

The plaintiff, a Wisconsin state prisoner who is representing himself, filed a civil rights complaint under 42 U.S.C. §1983 alleging that the defendants violated his constitutional rights. Dkt. No. 1. This order resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee (*in forma pauperis*), screens the plaintiff's complaint, and denies his motion for substitution of judge (Dkt. No. 7).

I.      ***IN FORMA PAUPERIS* STATUS**

The Prison Litigation Reform Act applies to this case because the plaintiff is incarcerated. 28 U.S.C. §1915. The law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil

1

case-filing fee, as long as he meets certain conditions. Id. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On November 7, 2016, the court assessed an initial partial filing fee of $7.00. Dkt. No. 5. The plaintiff paid that amount on November 17, 2016. Therefore, the court will grant the plaintiff's motion for leave to proceed without prepayment of the filling fee and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II.     SCREENING OF PLAINTIFF'S COMPLAINT

### A.     Standard for Screening Complaints

The Prison Litigation Reform Act requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court may dismiss an action or portion thereof if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific

2

facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Indeed, allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis set forth in Twombly to determine whether a complaint states a claim. Id. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.    Facts Alleged in the Complaint

The plaintiff alleges that on October 29, 2013, while incarcerated at the
Dodge Correctional Institution, he tested positive for "MRSA."[1] Dkt. No. 1 at 2.
Staff isolated the plaintiff and gave him medicine, and the swelling went down.
Id.

On December 25, 2013, the plaintiff noticed a large knot under his left
armpit. Id. He submitted several Health Service Requests to get it checked. Id.
On December 31, 2013, the plaintiff received a response directing him "to
inform unit officer if any drainage occurs." Id. at 3. Health Service Unit staff did
not see the plaintiff at that time. Id. The plaintiff alleges that later, he was
diagnosed with MRSA a second time. Id. He also alleges that, "[i]t appeared that
Dr. Williams had failed to correct or heal the infection." Id.

After the second diagnosis, the plaintiff went to the Health Services Unit
so that the bump could be lanced and drained. Id. However, instead of lancing
and draining the bump, Dr. Seabull "performed surgery" to remove the
infection. Id. Dr. Seabull allegedly performed the surgery "under false pretense
and misrepresentation" because the plaintiff had been told that he would just
lance the bump. Id. In addition, Dr. Seabull, who cut deep into the plaintiff's

_____

[1] "MRSA" is that abbreviation for methicillin-resistant *Staphylococcus aureus* or
multi-drug-resistant *Staphylococcus aureus*. Stedman's Medical Dictionary
562480. MRSA is "[a] common species found especially on nasal mucous
membrane and skin (hair follicles); bacterial species that produces exotoxins
including those that cause toxic shock syndrome, with resulting skin rash, and
renal, hepatic, and central nervous system disease, and an enterotoxin
associated with food poisoning[.]" Stedman's Medical Dictionary 846040.

4

armpit to remove the infected area, performed the surgery without medication to dull the pain. Id. The plaintiff alleges that Nurse Jane Doe maliciously misled the plaintiff into signing a release form. Id.

For relief, the plaintiff requests compensatory and punitive damages. Id. at 4.

C.     Discussion

To state an Eighth Amendment claim for the denial of medical care, an inmate's complaint must allege both an objectively serious medical condition and an official's deliberate indifference to that condition. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011). A medical condition is sufficiently serious if the failure to treat the condition could result in the unnecessary and wanton infliction of pain, and either the condition has been diagnosed by a physician as mandating treatment or the need for treatment would be obvious to a layperson. See Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012); Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011); Gutierrez v. Peters, 111 F.3d 1364, 1373–74 (7th Cir. 1997). A plaintiff can prove deliberate indifference by showing that a prison official knows of and disregards a substantial risk to an inmate. See Arnett, 658 F.3d at 751.

The plaintiff has alleged that his MRSA, which he contracted twice and which necessitated surgery, is a serious medical need. See Roe, 631 F.3d at 857.

5

With regard to Dr. Williams, the plaintiff alleges that Dr. Williams "failed to correct or heal the infection." It appears that the plaintiff blames Dr. Williams because the plaintiff contracted MRSA a second time. But the plaintiff also alleges that after the first infection, he received treatment, and the swelling went down. Perhaps the plaintiff blames Dr. Williams because he was forced to submit several Health Service Requests, and then, following the second flare-up, he received direction to notify staff if drainage occurred, instead of actually seeing medical staff. Either way, the court cannot identify a plausible claim against Dr. Williams based on the plaintiff's allegations. The court will allow the plaintiff to file an amended complaint clarifying his allegations against Dr. Williams. If he does, the court will review the allegations to determine if the plaintiff's allegations state a claim against Dr. Williams.

The plaintiff alleges that Dr. Seabull performed surgery by cutting deep into his armpit to remove his lump, without giving him medicine to dull the pain. The plaintiff does not claim that Dr. Seabull failed to treat the MRSA – the plaintiff apparently received treatment when Dr. Seabull removed the lump. Rather, the plaintiff challenges the manner in which Dr. Seabull treated him. The Seventh Circuit discussed this distinction in Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996), where a prisoner challenged a doctor's removal of his toenail without anesthesia. In that case, the court of appeals determined that the doctor's refusal to give anesthetic was part of the overall procedure of removing the toenail, not a separate claim. Id. The prisoner's desire for a local anesthetic was not a separable medical need under the Eighth Amendment. Id.

6

The Snipes court also stated, however, that "[o]bviously major surgery cannot be performed without appropriate anesthetic." Id.

Here, although it is not clear whether Dr. Seabull performed "major surgery" on the plaintiff, the surgery that he did perform, which involved cutting deeply into the plaintiff's armpit to remove a lump, is more invasive than removing a toenail. While the court might characterize both procedures as painful, cutting into the skin for a surgery distinguishes the facts of this case from Snipes. Accordingly, the court will, at this early stage, allow the plaintiff to proceed on an Eighth Amendment claim based on his allegation that Dr. Seabull performed surgery without medicine to dull the pain. See Walker v. Benjamin, 293 F.3d 1030, 1039-40 (7th Cir. 2002).

Finally, the plaintiff claims that he did not consent to the surgery. At this stage, the court will allow the plaintiff to proceed against Dr. Seabull and Nurse Jane Doe on a Fourth Amendment claim based on allegations that Dr. Seabull performed the surgery "under false pretense and misrepresentation," and that Nurse Jane forced the plaintiff into signing a release. See King v. McCarty, 781 F.3d 889, 900 (7th Cir. 2015).

The complaint does not contain any allegations against the remaining defendants, Dr. Duyoung and John Doe. Therefore, the court will dismiss these defendants.

## III.   MOTION TO SUBSTITUTE JUDGE

The plaintiff has filed a motion for substitution of judge. Dkt. No. 7. He states that he does not believe he will receive a fair trial and unbiased Decision

7

Case 2:16-cv-01463-PP   Filed 12/21/16   Page 7 of 12   Document 8

from Judge Pepper. <u>Id.</u> The plaintiff lists four prior cases he has filed--<u>Brown v.</u> <u>Hicks</u>, Case No. 15-cv-509-PP (E.D. Wis.); <u>Brown v. Garth-Dickens, *et al.*</u>, Case No. 16-cv-241; Case No. 16-cv-149 (the court is not familiar with this case; the docket does not reflect that the plaintiff has a case with that number in this court); and <u>Brown v. Milwaukee Cnty. Public Defenders Office</u>, Case No. 16-cv-632-PP (E.D. Wis.), and states that Judge Pepper has presided over all of them. He argues that all four of those cases are on appeal. The plaintiff argues that Judge Pepper is biased against him because of the number of cases he has filed. He also argues that the fact that five of the plaintiff's cases have been assigned to the same judge calls into question Judge Pepper's integrity. <u>Id.</u>

The plaintiff has filed a similar motion in other cases. In its decision in <u>Brown v. Garth-Dickens, *et al.*</u>, Case No. 16-cv-241-pp, Dkt. No. 48, the court opined that the plaintiff had confused the Wisconsin state court process with the procedures in federal court. Under Wis. Stat. §801.58, a party in a civil case in a Wisconsin circuit court may file a written request for substitution of a new judge, and if the assigned judge grants the motion, the clerk refers the case to the chief judge for assignment to a new judge. There is no similar process or statute in federal court. In federal court, if a party does not like the judge assigned to his case, he has only one option—to ask the judge to recuse herself under 18 U.S.C. §455. Section 455 lays out specified grounds that the judge must consider in deciding whether to recuse herself. Because there is no federal substitution procedure, the court must interpret the plaintiff's motion as a motion asking Judge Pepper to recuse herself.

Section 455(a) of Title 28 of the United States Code requires a federal judge to "disqualify [her]self in any proceedings in which [her] impartiality might reasonably be questioned." "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994).

The plaintiff's motion alleges that Judge Pepper cannot be fair or unbiased toward him because five of his pending cases were assigned to her. First, the court notes that only four of the plaintiff's cases have been assigned to her (including this current one). Second, Judge Pepper did not assign the plaintiff's cases; the clerk's office did. The Eastern District of Wisconsin has a policy, put into place before Judge Pepper joined the court, requiring that when a *pro se* plaintiff with an active case files a second case (or a third or fourth) during the pendency of the first case, all subsequent cases are assigned to the same judge. This policy is designed to prevent plaintiffs from "judge shopping"—filing their case in front of one judge and then, if that judge rules against them, filing the same case in front of a different judge in the hope of obtaining a better result. The plaintiff's cases were assigned to Judge Pepper under this policy.

Further, the fact that the plaintiff has filed four pending cases does not demonstrate that Judge Pepper is biased against him. It is not unusual for self-represented plaintiffs to file multiple cases; Judge Pepper has a number of plaintiffs who have multiple complaints pending at the same time. Judge Pepper considers each of those complaints, and each claim in each of the

9

complaints, separately, and does not punish a plaintiff for filing more than one complaint. The court will deny the plaintiff's request for disqualification under §455.

## IV.    CONCLUSION

The court **ORDERS** that the plaintiff's motion for leave to proceed without prepayment of the filing fee (*in forma pauperis*) is **GRANTED**. Dkt. No. 2.

The court **DISMISSES** defendants Duyoung and John Doe.

The court **DENIES** the plaintiff's motion to substitute judge. Dkt. No. 7.

The court further **ORDERS** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants.

The court also **ORDERS** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court further **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $343.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the

10

account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

The court will send copies of this order to the warden of the institution where the plaintiff is confined.

The court further **ORDERS** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if the plaintiff is no longer incarcerated at one of those institutions, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

The court advises the plaintiff that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. The parties must notify the Clerk of Court of any change of address. Failure to do so could

result in orders or other information not being timely delivered, thus affecting

the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 21st day of December, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge

Case 2:16-cv-01463-PP   Filed 12/21/16   Page 12 of 12   Document 8