ENNIS LEE BROWN,

        Plaintiff,

  v.                           Case No. 16-cv-1463-pp

DR. RICKY SEABUL,

        Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 51), DENYING PLAINTIFF'S MOTION FOR ORDER TO USE LEGAL LOAN (DKT. NO. 67) AND DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (DKT. NO. 68)**

---

The plaintiff, who is representing himself, filed this lawsuit under 42 U.S.C. §1983, alleging that various defendants violated his constitutional rights by failing to provide him with adequate medical care. On December 21, 2016, the court allowed the plaintiff to proceed on Eighth Amendment deliberate indifference claims against Dr. Ricky Seabul. Dkt. No. 8. The defendant has filed a motion for summary judgment, arguing that the plaintiff did not exhaust his administrative remedies. Dkt. No. 51. The plaintiff filed a motion to reconsider the court's order staying deadlines for filing dispositive motions, Dkt. No. 68, and a motion asking the court to allow him to use his legal loan to buy copies of his health records, Dkt. No. 67. The court denies these motions.

# I. MOTION FOR SUMMARY JUDGMENT (Dkt. No. 51)

## A. Relevant Facts

### 1. *Background Facts*

In his complaint, the plaintiff alleged that he tested positive for MRSA[1] while incarcerated at Dodge Correctional Institution in October 2013. Dkt. No. 1 at 2. Staff isolated him and gave him medicine, and the swelling went down. Id. A couple of months later, the plaintiff noticed a large knot under his left armpit, and submitted several health requests. Id. In a response, staff instructed the plaintiff to let the unit officer know if he experienced any drainage. Id. at 3. He says he was later diagnosed a second time with MRSA. Id. After the second diagnosis, the plaintiff was taken to the Health Services Unit so that the knot could be lanced and drained, but instead of doing that, Dr. Seabul "performed surgery" to remove the infection instead. Id. According to the plaintiff, Dr. Seabul performed the surgery under "false pretense and misrepresentation" because the plaintiff had been told that Dr. Seabul would just lance the knot. Id. The plaintiff also alleges that Dr. Seabul performed the surgery without medication to dull the pain, and that Seabul cut deeply into his armpit to remove the infection. Id.

---

[1] Methicillin-resistant Staphylococcus aureas, an infection caused by staph infection resistant to many antibiotics. https://www.mayoclinic.org/diseases-conditions/mrsa/symptoms-causes/syc-20375336.

## 2. *Inmate Complaint Review System*

At the time he filed his opening brief, the defendant asserted that the plaintiff had not filed an inmate complaint concerning the above allegations. Dkt. No. 53 at ¶1. The defendant alleged that the plaintiff did not file any complaints concerning medical care until April 2017—three-and-a-half years after these alleged incidents. Id. at ¶2. In the reply brief he filed two weeks later, however, the defendant asserted that it had "recently" come to defense counsel's attention that the plaintiff had "*submitted*—but the Inmate Complaint Examiner's (ICE) Office *rejected*—an inmate complaint related to the claims in this lawsuit." Dkt. No. 61 at 2. The defendant's proposed supplemental findings of fact stated that the plaintiff had submitted a complaint dated January 4, 2014, which the ICE rejected and returned to the plaintiff on January 6, 2014, along with a letter explaining why the complaint was being returned. Dkt. No. 62 at ¶¶ 8-9; see also Dkt. No. 58 at ¶4. The letter explained that the plaintiff needed to attempt to resolve the issue with the unit head, and then provide documentation that he had done so; the letter said that if the plaintiff could not resolve the issue with the unit head, he could resubmit his complaint. Dkt. No. 63-1 at 1.

The defendant asserts that return letters are mailed through prison mail the same day they are generated—in the case of this letter, it would have been mailed January 6, 2014—and the defendant asserts that the letter never was returned to the complaint examiner's office as undeliverable. Dkt. No. 62 at ¶¶10-11. The defendant alleges that there is no evidence that the plaintiff wrote

to the complaint examiner's office to say that he didn't receive a response to his complaint. Id. at ¶11. The plaintiff states in his sworn declaration, however, that he never received a reply after submitting the inmate complaint. Dkt. No. 58 at ¶11. The plaintiff's declaration states that he *did* write to the Health Services Manager, "as required prior to writing the [Corrections Complaint Examiner]," and that he also wrote to the warden. Dkt. No. 58 at ¶¶7-8. Once he received an answer from the Health Services Manager, he was taken to see his medical records, "at which point [he] complained" and was instructed to file an inmate complaint. Id. at ¶9.

On January 13, 2014—seven days after the defendant claims the return letter would have been mailed—the plaintiff was transferred to Waupun Correctional Institution. Dkt. No. 62 at ¶12.

B.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material" facts are those "that might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

4

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

C.    The Exhaustion Requirement

According to the Prison Litigation Reform Act (PLRA) (which applies in this case because the plaintiff was incarcerated when he filed his complaint), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Various important policy goals give rise to the rule requiring administrative exhaustion, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. Smith v. Zachary, 255 F.3d 446, 450-51 (7th Cir. 2001).

The Department of Corrections' (DOC) Inmate Complaint Review System (ICRS) provides the administrative process for inmates with complaints about

prison conditions or the actions of prison officials. Wis. Admin. Code §DOC 310.01(2)(a). Before an inmate can file a lawsuit, he must exhaust all administrative remedies that the DOC has promulgated by rule. Wis. Admin. Code §DOC 310.05. Inmates should use the ICRS to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code §DOC 310.08(1).

To use the ICRS, an inmate must file a complaint with the ICE within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §§DOC 310.07(1), 310.09(6). The ICE can review and acknowledge the complaint, then either reject or send a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§DOC 310.11(2), 310.11(11). Or the ICE can review the complaint and return it to the inmate and "direct [him] to attempt to resolve the issue." Wis. Admin. Code. §310.09(4).

> D.   The Court's Analysis

Whether the plaintiff exhausted his administrative remedies depends on one thing: whether he received the January 6, 2014 return letter instructing him to try to resolve the issue on his own with the unit head. If the plaintiff did not receive that letter, the ICRS process was not "available" to him, Towns v. Holton, 346 Fed. Appx. 97, 99 (7th Cir. 2009), and a plaintiff needs only to exhaust "available" remedies, Woodford v. Ngo, 548 U.S. 81, 84 (2006).

Exhaustion is an affirmative defense, Jones v. Bock, 549 U.S. 199, 211 (2007), and the burden to prove a plaintiff did not exhaust available remedies is on the defendant, Kaba v. Stepp, 458 F.3d 678, 681 (7th Cir. 2006) (internal

citation omitted). The court concludes that the defendant has not met that burden. The evidence shows that the plaintiff submitted his complaint on January 4, 2014, and that the ICE reviewed it. Docket No. 62 at ¶9. Instead of filing the complaint, however, the ICE returned it to the plaintiff on January 6, 2014, and instructed him to try to resolve the issue with the head of the HSU. Id.; Docket No. 63-1. The defendant alleges that return letters are mailed through the prison mail system the same day they are generated. Docket No. 62 at ¶10. Therefore, the plaintiff should have received his returned complaint within a couple of days of January 6, 2014. Id. The defendant states that there is no record that the letter came back to the complaint examiner's office, or that the plaintiff wrote to the ICE saying he never received a response. Id. at ¶11. The plaintiff swears under penalty of perjury that he never received the returned complaint and letter from the ICE. Docket No. 58 at ¶11.

There is no evidence that the return letter actually was mailed to the plaintiff on January 6, 2014; the defendant alleges only that this was the practice. There is no evidence that the letter was mailed, period. There is no evidence showing that the plaintiff received the letter, and the plaintiff swears that he did not.

The court also notes that the time frame is tight here. The date on the return letter is January 6, 2014. Even assuming the letter did go into the institution mail sometime that day, it is possible that it could have encountered delays. The plaintiff was transferred to Waupun only seven days after the date the return letter was written; even if the ICE mailed the letter, any delay could

mean that it might not have reached the plaintiff before he left Dodge. It might have gotten lost. Both the plaintiff and the defendant could be right: the ICE could have sent the complaint and letter, but because of delay or loss or destruction, the plaintiff did not receive them. Only if the defendant could demonstrate that the plaintiff received the return letter can he show that the plaintiff's administrative remedy of trying to work things out (which the plaintiff swears he did) was available to him. The defendant has not met his burden to show that the plaintiff received the letter. The court will deny the defendant's motion for summary judgment on exhaustion grounds. The court will extend the deadline for the defendant to file a motion for summary judgment on the merits of the plaintiff's claims.

## II.    MOTION FOR ORDER TO USE LEGAL LOAN (Dkt. No. 67)

The plaintiff has asked the court to allow him to use his "approved legal loan" to buy copies of all his medical records. Dkt. No. 67. He says that the defendant has refused his request to provide him with copies, and says that he was "instructed"—he does not say by whom—to get an order from the court to use the loan to pay for the copies. He is not asking the court to order the prison to give him a legal loan (and the court is unlikely to grant such a motion); he asserts that the Waupun staff refuses to allow him to use the legal loan process to purchase these copies, and asks the court to order the prison to allow him to use his legal loan to do so. Id.

As the plaintiff knows, courts are hesitant to interfere with the procedural rules of a correctional institution. The court defers to the institution

on the use of the plaintiff's legal loan, just as it defers to the institution for other administrative matters. If the institution has a rule or procedure that requires an inmate to obtain a court order to use a legal loan in a particular way, the plaintiff can provide the court with a copy of that rule or procedure (or a letter from a staff member), and the court will reconsider. At this point, the court will deny the motion.

## III.   MOTION FOR RECONSIDERATION AND RECUSAL

The plaintiff also filed a motion asking the court to reconsider its January 22, 2018 order staying the dispositive motion deadline. Dkt. No. 68. He also asks the court to recuse itself from all the cases he has pending. Id. at 4. The court will deny both requests.

A motion for reconsideration is "an extraordinary remedy" that is "granted only in exceptional circumstances[.]" 3SM Realty & Dev., Inc. v. F.D.I.C., 393 Fed. App'x 381, 384 (7th Cir 2010) (quoting McCormick v. City of Chi., 230 F.3d 319, 327 (7th Cir. 2000)). The plaintiff alleges that the court stayed the case deadlines to give the defendant a chance to file motions on issue he forfeited, and to prejudice the plaintiff. Dkt. No. 68 at 1. That is not why the court granted the defendant's motion to stay the deadlines. The court granted the motion because, if the court had agreed with the defendant that the plaintiff did not exhaust his administrative remedies, the court would have had to dismiss the plaintiff's case, and there would have been no reason for either side to do all the work of briefing motions. The court does not agree with the defendant, however; the defendant has not demonstrated that the plaintiff

failed to exhaust his remedies, and the court is going to lift the stay and allow the case to continue. There is no reason for the court to reconsider its order staying the deadlines.

The court also will deny the plaintiff's request that the court recuse itself. The plaintiff alleges it has come to his attention that because he is an African American male who is in custody and convicted of a crime, the court has been biased and racially motivated to deny him relief. Dkt. No. 68 at 2. He states that Judge Pepper's former job as a prosecutor shows that she is biased, and that she should have recused herself. Id. The plaintiff says that he objects to the court's erroneous rulings and racially-motivated acts to deny him relief. Id. at 5.

Section 455(a) of Title 28 of the United States Code requires a federal judge to "disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." However, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994). In order to succeed on a recusal claim under §455(a), a plaintiff must show that the judge relied upon knowledge acquired outside the case or displayed deep-seated and unequivocal antagonism that would render fair judgment impossible. See id. at 556.

Section 144 of Title 28 says that if a party "makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party," the judge cannot proceed with the case. "The affidavit shall state the facts and

the reasons for the belief that bias or prejudice exists . . . ." If the plaintiff is

seeking disqualification of Judge Pepper under 28 U.S.C. §144, he must file an

affidavit stating facts that are "sufficiently definite and particular to convince a

reasonable person that bias exists; simple conclusions, opinions, or rumors are

insufficient." United States v. Sykes, 7 F.3d 1331, 1339 (7th Cir. 1993) (citation

omitted). See also, Hoffman v. Caterpillar, Inc., 368 F.3d 709, 718 (7th Cir.

2004). Again, judicial rulings alone almost never constitute a valid basis for

disqualification under §144. Hoffman, 368 F.3d at 718 (citing Liteky, 510 U.S.

at 555).

The court understands that the plaintiff strongly disagrees with a

number of its rulings, and that he is very frustrated with the fact that the court

has not moved his cases along as quickly as he would like (and frankly, as

quickly as the court would like). But the plaintiff has not presented any

evidence that the reason the court has ruled against him, or that it has not

ruled as quickly as he would like, is because of his gender or his race or the

fact that he is incarcerated. He says that facts have recently come to his

attention, but does not explain what those facts are. The only evidence the

plaintiff has presented is the fact that the court has not always ruled in his

favor. That is not enough to require a judge to disqualify herself. The court will

deny the plaintiff's request that it recuse itself.

The plaintiff also takes issue with the fact that his cases all have been

assigned to Judge Pepper. The Clerk of Courts randomly assigns cases among

the judges in the Eastern District. Once a *pro se* plaintiff has a case open

before one judge, however, the clerk's office assigns any subsequent case the plaintiff may file while that case is pending to the same judge; that is court policy for all *pro se* cases, and the policy was in place when Judge Pepper joined the district court.

## III.  CONCLUSION

The court **DENIES** the defendant's motion for summary judgment. Dkt. No. 51.

The court **DENIES** the plaintiff's motion for order to use legal loan. Dkt. No. 67.

The court **DENIES** the plaintiff's motion for reconsideration and recusal. Dkt. No. 68.

The court **ORDERS** that the January 22, 2018 stay of scheduling deadlines, dkt. no. 66, is **LIFTED**. If the defendant wishes to file a motion for summary judgment on the merits of the plaintiff's claims, he must do so by the end of the day on **October 5, 2018**. If the defendant does not intend to file a summary judgment motion on the merits, he should alert the court as soon as possible so that it can schedule a trial. If the defendant does file a motion for summary judgment, the plaintiff shall file his opposition brief (or a motion asking for more time) by the end of the day on **November 9, 2018**; the defendant shall file his reply, if any, by the end of the day on **November 30, 2018**.

Dated in Milwaukee, Wisconsin this 29th day of August, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**