UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ENNIS LEE BROWN,

    Plaintiff,

 v.

                Case No. 16-cv-1463-pp

DR. RICKY SEABUL,

    Defendant.

---

**ORDER GRANTING PLAINTIFF'S REQUEST TO REPRESENT HIMSELF (DKT. NO. 111) AND PROVIDING INFORMATION REGARDING HIS REQUESTS FOR EXPERT WITNESSES**

---

  On December 6, 2018, the court issued an order noting that it was recruiting a lawyer to represent the plaintiff; the plaintiff had been representing himself since filing his case in November 2016, over two years earlier. Dkt. No. 86. On April 30, 2019, the court issued an order indicating that Attorney Aaron DeKosky had agreed to represent the plaintiff. Dkt. No. 92. The court received the plaintiff's agreement to reimburse the court's *pro bono* fund on April 30, 2019. Dkt. No. 93.

  Two months later, the court held a status conference with the plaintiff's new lawyer. Dkt. No. 96. Counsel reported that he'd spoken with the plaintiff and reviewed the plaintiff's file, and he pointed out that the plaintiff had served a discovery request back in 2017 that the defendant had not yet responded to. Id. at 1. Defense counsel explained that she hadn't received the request, but

1

said she could respond within thirty days. Id. The court scheduled another status conference for September 10, 2019. Id.

At the September 10, 2019 status, the plaintiff's lawyer reported that the plaintiff was open to participating in mediation. Dkt. No. 98. The defendant, however, was not willing to mediate, noting that if he were to agree to settle the case, it could have an impact on his medical license. Id. The court agreed to have its staff contact the parties to schedule a final pretrial conference and a trial. Id.

After the court's staff had conferred with the parties, the court scheduled a final pretrial conference for December 12, 2019 and a trial for January 13, 2020. The court set aside two days for the trial. The parties filed a joint pretrial report on December 5, 2019, dkt. no. 105, but at the final pretrial conference, the plaintiff disagreed with his counsel on several issues—the predicted length of the trial, the witnesses to be called, the number of jurors, even the motions *in limine* his lawyer had filed, dkt. no. 110. The court ruled on the motions *in limine*, and currently the trial is scheduled to begin on January 13, 2020 at 8:30 a.m.

On December 26, 2019, the court received a document from the plaintiff titled "Letter to the Judge of Concerns about Aaron DeKosky." Dkt. No. 111. The letter indicates that the plaintiff's lawyer has not been diligent in exploring witnesses to dispute the defendant, that his lawyer has filed motions and taken actions without his knowledge, and that the plaintiff's research indicates that his lawyer has not won a trial for an inmate. Id. The plaintiff indicates that his

lawyer has not asked to meet with him or go over the case with him. Id. He asks the court to allow him to represent himself, and to allow him to proceed to trial on January 13, 2020 as scheduled. Id. The plaintiff also asks the court to allow him to obtain expert witnesses, including a lab technician to explain the results of the MRSA test and a practicing doctor experienced in treating MRSA. Id.

Attorney DeKosky filed his own letter, informing the court that he has discussed the case with the plaintiff several times and has discussed the facts and law relating to the plaintiff's claims. Dkt. No. 112. Counsel indicates that the plaintiff has strong skepticism of the judicial system, and doubts that Attorney DeKoskey is trying to help him. Nonetheless, Attorney DeKoskey indicates that he is willing to act as stand-by counsel if the court allows the plaintiff to represent himself. Id.

The plaintiff certainly may represent himself, if that truly is his choice. The court notes several things, however. First, the plaintiff himself asked the court to appoint him a lawyer. Dkt. No. 76. On September 27, 2018, the plaintiff told the court that although he'd had several cases in the Eastern District, he did not have sufficient legal skills to represent himself in this case. He indicated that he'd contacted over thirty lawyers but hadn't been able to find anyone to help him. Id. Initially, the court denied that request because it didn't know, at that time, whether the defendant planned to move for summary judgment on the substance of the plaintiff's claim, or whether the case was headed for trial. Dkt. No. 78 at 5-6. Once it was clear that the defendant was

not going to file for summary judgment on the merits, however, the court began to look for a lawyer who would be willing to represent the plaintiff. Dkt. No. 86.

Second, the court does not have the funds to pay lawyers to represent incarcerated plaintiffs. It must rely on volunteer lawyers. The Seventh Circuit has noted that "28 U.S.C. § 1915 does not authorize a district court to command unwilling lawyers to represent prisoners." James v. Eli, 846 F.3d 951, 953 (7th Cir. 2017), superseded on rehearing, 889 F.3d 320, 327 (7th Cir. 2018). The court has a list of lawyers who have taken appointments in the past, and occasionally it is able to add new lawyers to that list. But it is very difficult to find lawyers who are willing to represent someone at trial free of charge. Some lawyers will not volunteer because they aren't familiar with civil rights law. Others are prohibited by their firms from accepting cases. Others have conflicts of interest. Others simply can't, or won't, take time away from their paying clients to represent someone who can't pay. That may not be fair, and this court wishes it weren't so. But the reality is that the judges in this district have been struggling for some time with how to encourage more lawyers to volunteer to represent incarcerated plaintiffs. Even now, the court is collecting information about how courts in other districts encourage volunteers, in the hope that it can increase volunteer participation here. As the court has noted, it started looking for a lawyer to represent the plaintiff in early December 2018. It wasn't able to get a lawyer until Mr. DeKoskey agreed to represent the plaintiff in late April; it took some five months to find a volunteer lawyer.

Third, the plaintiff indicates that as far as he can tell, Mr. DeKoskey has not "won" a case for a "little guy." The court has not researched every case in which Mr. DeKoskey has agreed to accept representation, and so it cannot determine whether the plaintiff is correct. But if the plaintiff *is* correct, it would not surprise the court. Civil rights cases are tough to prove and difficult to win, even when the plaintiff is not incarcerated. The plaintiff must prove, not just that the defendant was negligent or committed malpractice, but that the defendant knew or should have known of a substantial risk to the plaintiff and ignored it or was *deliberately* indifferent to it. While most plaintiffs believe that their injuries were the result of deliberate actions by prison staff (they wouldn't file their lawsuits if they didn't), juries don't always agree. And the court does not know the claims involved in those other cases. As the plaintiff knows, civil rights cases may involve claims of the use of excessive force, denial of freedom of religion or freedom of speech, sub-standard conditions of confinement—all of which are fact-based and depend on the evidence presented to the jury. When an attorney like Mr. DeKoskey agrees to represent someone at trial, he is walking into a case that he did not bring. He did not draft the complaint. He did not conduct the initial discovery. He did not file the motions. He takes the case as he gets it.

Fourth, the plaintiff should be aware that if he represents himself, he will have to follow the same rules of evidence and procedure that every other litigant must follow. The court cannot "help" him or advise him during the trial. Attorney DeKoskey has agreed to act as stand-by counsel if the court grants

the plaintiff's request; that means that he would be present in the courtroom, and if the plaintiff came across an issue he didn't understand or a process with which he was not familiar, he could ask Attorney DeKoskey. But the court would not be able to "cut corners" for the plaintiff, just because he is representing himself. The Seventh Circuit has noted that "prisoners 'often face difficulty "when litigating constitutional claims that involve the state of mind of the defendant,"' such as those involving deliberate indifference." James, 889 F.3d at 327 (quoting Henderson v. Ghosh, 755 F.3d 559, 566 (7th Cir. 2014)). "'[W]hen it comes to nuanced legal issues like . . . deliberate indifference, . . . even a relatively sophisticated litigant may find it difficult to identify and present the right type of evidence.'" Id. (quoting Pruitt v. Mote, 503 F.3d 647, 664 (7th Cir. 2007) (en banc, Rovner, J., concurring)). The court also has acknowledged that cases involving medical evidence are even more challenging, especially if the plaintiff received *some* medical care, "because he must show a 'substantial departure from accepted professional judgment, practice, or standards,' and expert medical evidence is often required to prove this aspect of his claim." Id. at 328 (citations omitted). "[I]t can be challenging to draw a line between an acceptable difference of opinion . . . and an action that reflects sub-minimal competence and crosses the threshold into deliberate indifference." Id. (quoting Petties v. Carter, 836 F.3d 722, 729 (7th Cir. 2016) (en banc)).

The plaintiff also has indicated that he wants to proceed to trial on January 13, 2020 as planned, but that he wants the court to "allow" him to "obtain" expert witnesses. The court issued a civil pretrial order on September

6

25, 2019—over three months ago. That order required the parties to provide the name, occupation and city of residence of each potential witness. Dkt. No. 99 at 2. It stated, "The court will not permit a party to call in its case-in-chief any witness not listed, absent a showing of good cause." Id. The deadline for filing that witness list was December 5, 2019. Id. at 1. This is why the plaintiff's lawyer filed a motion, asking the court to bar the defense from calling any witnesses not on the defendant's witness list—because the court's own pretrial order stated that it would not allow either party to call witnesses not on the list without a showing of good cause. If the plaintiff wants to go to trial on January 13, 2020, it is too late for him to obtain or add new witnesses to the witness list.

      The plaintiff stated that he wanted the court to allow him to obtain these experts. The court does not know whether the plaintiff himself has experts in mind, or whether he is asking the court to find medical experts and appoint them to represent him free-of-charge. If the plaintiff is asking the court to recruit experts for him, he faces other challenges. First, even if the plaintiff needs an expert to prove his claims (and, as the court discusses below, it is not certain that he does), and even if the court agreed to try to recruit and appoint such experts, there is no way that the trial could proceed on January 13, 2020. While the court has a list of volunteer lawyers it can call to try to recruit counsel, it has no such list for volunteer lab technicians or doctors. Even if the court were to find such experts, it would either be required to use the power and prestige of its office to coerce the expert into assisting the plaintiff without

7

being paid, or consider shifting the cost to the defendant, which the defendant would vociferously challenge. Even if the court were to find experts willing to represent the plaintiff free-of-charge, the defendant then would have the right to obtain discovery from those experts and, if he thought it necessary, obtain his own experts (from whom the plaintiff would be entitled to obtain discovery). All of this would require the court to adjourn the January 13, 2020 trial, probably for months.

But the court questions the plaintiff's belief that he needs a lab technician and a medical doctor experienced in treating MRSA to prove his claims. The plaintiff says that he needs a lab technician to explain the lab results of the test for MRSA (methicillin-resistant staphylococcus aureus) and a practicing doctor with experience in treating MRSA. But as the court noted in its screening order, the plaintiff has not alleged that the defendant—Dr. Seabul—failed to treat his MRSA. Dkt. No. 8 at 6. Rather, he alleged that Dr. Seabul was deliberately indifferent in the way he lanced the knot under the plaintiff's armpit. Id. The plaintiff has alleged that he didn't agree to the procedure, and that Dr. Seabul didn't give him anesthesia before performing the procedure. Id. at 7. These claims don't have anything to do with the MRSA diagnosis. In fact, the court dismissed as a defendant Dr. Williams, the doctor who did appear to be involved in the MRSA treatment and diagnosis, because the plaintiff failed to state a claim against him. Dkt. No. 26. The court does not know why the plaintiff believes that he needs experts to testify about MRSA,

when his claims against Dr. Seabul relate to the procedure to lance the abscess.

As the court understands the plaintiff's claims, he is alleging that Dr. Seabul performed a procedure on him without his permission and did so without using anesthesia. It does not appear that expert medical testimony is necessary for the plaintiff to prove these claims. Either the evidence will show that Dr. Seabul had the plaintiff's permission or he didn't. The jury will be able to figure out whether lancing a knot in someone's skin without using anesthesia is likely to cause pain. The Seventh Circuit has held that a district court need not appoint an expert "[t]o explain symptoms that can be understood by a layperson." Turner v. Cox, 569 Fed. App'x 463, 469 (7th Cir. 2014) (citations omitted).

The court notes one other thing. There are two judges in this district who have trials scheduled to begin the morning of January 13, 2020. This may result in a delay in getting the jury pool; the court may not be able to begin selecting the jury for this trial until mid or late morning on January 13.

The court will grant the plaintiff's request to represent himself. It will ask Attorney DeKoskey to act as stand-by counsel during the January 13, 2020 trial. If, after reviewing the information the court has provided above, the plaintiff believes that he needs medical experts to prove his case and can demonstrate why he needs those experts, he may file a motion asking the court to adjourn the January 13, 2020 trial and explaining why he needs expert testimony. The defendant, of course, would be free to object to that request.

The court **GRANTS** the plaintiff's motion to represent himself. Dkt. No. 111.

The court **REQUESTS** that Attorney DeKoskey be present to act as stand-by counsel during the January 13, 2020 trial.

Dated in Milwaukee, Wisconsin this 31st day of December, 2019.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**